### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH IADELUCA )<br>    Plaintiff )<br> )<br>v.    )<br> )<br>HARBORCREEK YOUTH SERVICES )<br>    Defendant ) | 1:20-cv-70 |

## COMPLAINT

AND NOW, to wit, comes the Plaintiff, Elizabeth Iadeluca, by and through her attorney, Richard T. Ruth, Esq., and files the following Complaint:

### I.    PARTIES

1. Plaintiff is Elizabeth Iadeluca, an adult citizen and resident of Erie County, Pennsylvania.

2. Harborcreek Youth Services, herein "HYS", is a Non-Profit Pennsylvania Corporation with its principal place of business at 5712 Iroquois Avenue, Harborcreek, Pennsylvania, 16421; Harborcreek Youth Services provides residential and in-home services to vulnerable children and their families including child residential psychiatric services; HYS is an accredited child and family social service agency mandated to comply with all statutory requirements of the Pennsylvania Department of Human Services (DHS) and the Pennsylvania Office of Mental Health and Substance Abuse (OMHSA).

## II. VENUE

3. The venue of this action is the Erie District of the Western District Federal Court of Pennsylvania pursuant to the general venue statute which is 28 U.S.C. § 1391(b) and the False Claims Act venue statute which is 31 U.S.C. § 3732(a).

## III. JURISDICTION

4. Jurisdiction of this action is conferred by 31 U.S.C. § 3732 (the False Claims Act retaliation Count I) and under the supplemental jurisdiction statute, 28 U.S.C. § 1367 (for the state law PWL claim which is Count II).

## IV. BACKGROUND

5. Plaintiff was hired by HYS on November 5, 2006, as Chief Financial Officer (CFO) and terminated on January 17, 2020, for loss of "trust and confidence."

6. Among her other duties as CFO, Plaintiff was charged with monitoring Medical Assistance (MA) billings to assist in identifying and resolving overpayments or improper payments of MA funds, but Plaintiff's job duties were not solely and exclusively directed at detecting waste, fraud, and abuse.

7. Plaintiff performed her duties monitoring MA programs and her other duties at all times in the manner consistent with HYS's policy on fraud, waste, and abuse which is that HYS has zero tolerance for the commission or concealment of acts of fraud, waste, or abuse.

8. Plaintiff performed her duties monitoring MA payments and the submission of claims for MA payment in a manner consistent with HYS's policy of compliance

with applicable regulations established by DHS.

9. Plaintiff performed her duties monitoring MA payments at all times in compliance with HYS's policy of protecting clients above all other concerns and in attaining their best interests regarding treatment needs.

10. Throughout her employment at HYS, Plaintiff diligently performed her duties as CFO; consistently received management evaluations which found her performance exceeded expectations and provided outstanding service; and had never received any discipline or negative performance feedback.

11. After successfully completing HYS's annual audit in late December, 2019, on January 10, 2020, she received a Performance Improvement Plan (PIP) that was at stark variance with the most recent annual review she had received in late 2018 (that review was Exceeded Expectations); this was her first negative evaluation at HYS.

12. Plaintiff was asked to sign the PIP, which included a statement that the PIP's description of her alleged recent job performance deficiencies was accurate; Plaintiff refused to sign this statement on January 17, 2020, as the PIP's statement was not accurate; Plaintiff was thereupon immediately terminated for "loss of trust and confidence" on January 17, 2020.

13. The PIP of January 10, 2020, was prepared and presented to Plaintiff in retaliation for Plaintiff having emphatically objected in June, 2019, to the following failures of HYS during the Spring of 2019:

   A. To timely review plans of care of residents;

  B. To timely recertify residents' continued need for impatient care; and

  C. To timely provide legally mandated psychiatric therapy services to residents.

14. HYS's failures set forth above were induced by HYS's job dismissal of a psychiatrist in the Winter of 2019, without having in place a qualified psychiatrist to take over the duties the dismissed psychiatrist had been performing.

15. HYS's failures set forth above created violations of both state and federal laws and Regulations which mandate compliance in order to continue to receive MA funds from DHS, which MA funds originate from the federal government.

16. HYS currently receives nearly seven million dollars ($7,000.000.00) annually from the Pennsylvania DHS for MA services.

17. From February till May, 2019, HSY was out of compliance with various state, federal Regulations and conduct standards which Plaintiff discovered at the end of May, 2019.

18. On June 5, 2019, Plaintiff reviewed with relevant management, including its CEO John Petulla, applicable state and federal Regulations and conduct standards with which HYS had been out of compliance due to the above set forth failures.

19. Plaintiff alerted relevant management, including its CEO John Petulla, that HYS's submissions of claims for MA funds were not properly documented for services; were below accepted medical treatment standards; and further alerted that such submissions were potentially criminal under Pennsylvania law. (See 62 P.S. §

1407).

20. Between June, 2019, and early 2020, Plaintiff continued to conscientiously perform her CFO duties and did nothing to warrant her receipt of the PIP on January 10, 2020.

21. Plaintiff's complaints were in reliance on and supported by the following Regulations and conduct standards:

   A. 42 CFR § 441.155(c) and 42 CFR § 456.180: Individual written plans of care must be reviewed by a team every 30 days.

   B. 42 CFR § 441.156(c), (1), (2), (3): The team that must review every 30 days must include a Board-eligible or Board-certified psychiatrist.

   C. 42 CFR § 456.610(b)(1): The attending team physician must review prescribed medications at least every 30 days.

   D. 42 CFR § 456.160(2): The attending physician must recertify inpatients services are needed at least every 60 days after initial certification.

   E. Medical Assistance Bulletin, Commonwealth of Pennsylvania, Department of Public Welfare, issued September 8, 1995, at 01-095-13, *et seq.*: An accredited residential treatment facility must adhere to Federal Regulations to be eligible to receive payments for MA services. The specific Federal Regulations which require compliance are: 42 CFR § 441, Subparts A, B, and D; 42 CFR § 456, Subparts D, G, I, and J.

   F. 55 Pa. Code § 3800.226(3): An Individual Support Plan (ISP) must include monthly documentation of the child's progress toward

        individualized goals of the ISP.

    G.    <u>RTF Performance Standards</u>, pages 5 of 14: A psychiatrist must see every resident face to face not less than every 30 days.

    H.    <u>RTF Provider Chart Audit Tool</u>, pages 5 of 9: A psychiatrist must attend and be an active participant in monthly interagency team meetings and treatment team meetings.

### COUNT I - FALSE CLAIMS ACT RETALIATION AGAINST HYS

22. Paragraphs 1-21 above are hereby incorporated herein by reference as if the same were here fully stated.

23. Plaintiff was an "employee" as used under 31 U.S.C. § 3730(h)(1).

24. At all relevant times, defendant HYS was an "employer" covered by the provisions of the False Claims Act, 31 U.S.C. §§ 3729-3733("FCA").

25. Plaintiff's activities, set forth in Paragraphs 5-21 above, constituted collecting of information about possible fraud involving the use of federal government funds; alerting senior management of HYS to that possible fraud; and vigorously objecting to senior management about possibly fraudulent practices. As such, plaintiff's activities constituted "protected conduct" under 31 U.S.C. § 3730.

26. Plaintiff's discharge was motivated at least in part by plaintiff's engaging in "protected conduct" under 31 U.S.C. § 3730.

27. The "protected conduct" which plaintiff engaged in, as set forth above, put defendant HYS on notice of the distinct possibility of FCA litigation.

28. Plaintiff was discharged from employment because of lawful acts which she performed to prevent the making by HYS of false or fraudulent claims with the

federal government; as such, her discharge was in violation of 31 U.S.C. § 3730(h)(1).

29. As a result of the violations herein set forth, plaintiff is entitled under 31 U.S.C. § 3730(b)(2) to reinstatement to the status she would have before her discharge; two times the amount of her back pay; interest on her back pay; and compensation for any special damages sustained as a result of her discharge, including litigation costs and reasonable attorney fees.

WHEREFORE, Plaintiff demands judgment against Defendant HYS for reinstatement to the same status she would have before her discharge; two times the amount of her back pay; interest on her back pay; compensation for any special damages sustained as a result of her discriminatory discharge, including litigation costs and reasonable attorney fees.

**JURY TRIAL OF EIGHT DEMANDED**

**UNDER 7th AMENDMENT OF U.S.**

**CONSTITUTION**

**COUNT III - PENNSYLVANIA WHISTLEBLOWER**

**LAW VIOLATION AGAINST HYS**

30. Paragraphs 1-21 above are hereby incorporated herein by reference as if the same were here fully stated.

31. HYS's conduct, as set forth above, constituted substantial "waste" under the Pennsylvania Whistleblower Law in that the DHS paid for medical services not rendered, which payments were in the hundreds of thousands of dollars.

32. Plaintiff reported HYS's substantial "waste" in good faith as set forth above.

33. This claim arises under the Pennsylvania Whistleblower Law, 42 PS § 1421,

*et seq.* and is for damages and injunctive relief caused by the termination of Plaintiff's employment by HYS in retaliation for Plaintiff's report to appropriate authorities of "waste" in her workplace.

34. At all times relevant, HYS was a "employer" as defined under the Pennsylvania Whistleblower Law, 43 PS § 1421.

35. On January 17, 2020, HYS terminated Plaintiff's employment in violation of the Whistleblower Law, 43 PS § 1421, *et seq.* which states in part:

    Under § 1423, Protection of Employees

    a. Persons not to be discharged.

    No employer may discharge, threaten, or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of "wrongdoing" or "waste".

36. Under § 1425 of the Whistleblower Law, Plaintiff is entitled to:

    A. Reinstatement;

    B. Payment of back wages;

    C. Full reinstatement of fringe benefits;

    D. Seniority rights;

    E. Actual damages including damages for emotional and/or mental distress;

    F. Counsel fees and costs of litigation; and

    G. Prejudgment interest.

WHEREFORE, Plaintiff requests the Court to Order reinstatement, back wages, reinstatement of fringe benefits, seniority rights, actual damages including mental and /or emotional damages, counsel fees, costs of litigation, and prejudgment interest against Respondent Pennsylvania Department of Human Services

**JURY TRIAL OF EIGHT DEMANDED**

**UNDER 7th AMENDMENT OF U.S.**

**CONSTITUTION**

Respectfully submitted,

*[signature]*

Richard T. Ruth, Esquire
Attorney for Plaintiff
1026 West 26th Street
Erie, PA 16508
T: 814-453-6606
F: 814-453-5047
rt@rtruth.net